UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NICHOLAS BOLANOS,<br><br>　　　　　Defendant. | No. 1:17-cr-198-05 WBS<br><br><br>ORDER |

----oo0oo----

Defendant Nicholas Bolanos has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Docket No. 609.)  The United States opposes the motion.  (Docket No. 610.)

I.  Factual and Procedural Background

On June 2, 2011, a federal grand jury returned a thirty-seven-count superseding indictment against defendant and several co-conspirators, charging defendant with conspiracy to distribute or possess with the intent to distribute controlled substances (500g methamphetamine) in violation of 21 U.S.C. §§

1

846, 841(a)(1) (count one), conspiracy to distribute or possess with intent to distribute controlled substances (50g methamphetamine), in violation of 21 U.S.C. §§ 846, 841(a)(1) (counts two, five, and six), distribution of a controlled substance (50g or more methamphetamine) in violation of 21 U.S.C. § 841(a)(1) (counts seven, eleven, fifteen, and sixteen), and conspiracy to engage in the business of dealing firearms without a license, in violation of 18 U.S.C. §§ 371, 922(a)(1)(A) (count twenty-one). (See Docket No. 136.)

On February 4, 2019, pursuant to a written plea agreement, defendant pleaded guilty to count one of the superseding indictment. (See Docket Nos. 322, 327.) On April 29, 2019, Judge O'Neill sentenced defendant to 90 months imprisonment, followed by a 36-month term of supervised release, and a $100 special assessment. (See Docket Nos. 419, 421.)

Defendant is currently serving his 90-month sentence at FCI Lompoc and has a projected release date of January 8, 2024. (See Gov't's Opp'n, Ex 1 (Docket No. 610).)

II. Discussion

Before a defendant may file a motion seeking a time-served sentence under § 3582(c)(1)(A)(i), he must have first "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A)(i).[1] In order to be eligible for

---

[1] Defendant represents, and the government agrees, that he has exhausted his administrative remedies. The parties

2

compassionate release, the defendant must then demonstrate: (1) the existence of "extraordinary and compelling" reasons, (2) that he is not a danger to the safety of any other person or the community to the community, and (3) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)A)(i)-(ii).

The First Step Act amended § 3582(c)(1)(A) to permit a defendant to seek compassionate release after fully exhausting administrative remedies for the failure of the Bureau of Prisons to bring a motion on behalf of the defendant, or 30 days after requesting the warden of the facility to bring such a motion. See First Step Act of 2018, § 603(b).  Importantly, other than authorizing a defendant to file a motion for relief, § 3582(c)(1)(A) remains unchanged after the First Step Act.  See United States v. Nasirun, No. 8:99-CR-367, 2020 WL 686030, at * 2 (M.D. Fla. Feb. 11, 2020.)

The Application Notes of Section 1B1.13 of the Sentencing Guidelines define the "extraordinary and compelling reasons" which make a defendant eligible for compassionate release to include "a terminal illness", see U.S.S.G. §1B1.13

---

present two different documents which purportedly represent defendant's application to his warden for compassionate release, and disagree as to when exactly defendant submitted that application.  (See Def.'s Mot. for Compassionate Release at 11-12, Ex. D (Docket No. 609) (representing that defendant applied for compassionate release on August 12, 2020); Gov't's Opp'n at 4, Ex. 3 (representing that defendant applied for compassionate release on July 30, 2020).)  Regardless, because more than thirty days passed since the latter of these two documents was submitted to the warden, and the warden issued a written denial of that application (see Government's Opp'n, Ex. 4), defendant has exhausted his administrative remedies.

3

(U.S. Sentencing Comm'n 2018) at n.1(A)(i); (2) a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover", see id. at n.1(A)(ii); (3) the defendant is at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less", id. at n.(1)(B); or (4) "[a]s determined by the Director of the Bureau of Prisons ("BOP"), there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)". Id. at n.(1)(D).

Defendant contends that his chronic medical issues, combined with lingering symptoms from his prior contraction of Covid-19, constitute "extraordinary and compelling circumstances" under 3582(c)(1)(A). The court recognizes that defendant suffers from tinea unguium, dermatohytosis (ringworm), alcohol use disorder, cannabis use disorder, stimulant related disorders, anxiety disorder, pulpitis, dermatitis, and headaches (associated with Covid-19), that he previously contracted Covid-19, and that he is obese (BMI 33). (See Gov't's Opp'n, Ex. 2 ("Def.'s BOP Health Records") at 26 (Docket Nos. 610, 614).)

Defendant also continues to suffer from symptoms which he claims are associated with his prior contraction of Covid-19, including dyspnea, chest pains, headaches, rashes, shortness of breath, and sleep apnea. (See Def.'s BOP Health Records at 1-16). Defendant also appears to have been diagnosed with idiopathic

4

1 thrombocytopenia purpura ("ITP") as a child, a pre-existing
2 condition that, as defendant describes it, increases the risk
3 that he will suffer from pulmonary blood clots.[2]  (See Def.'s
4 Mot. for Compassionate Release at 3 (Docket No. 609); Def.'s
5 Reply, Ex. K (Docket No. 615).)  The court further recognizes
6 that defendant is housed at FCI Lompoc, which has had numerous
7 inmates test positive for Covid-19, including defendant.
8 Nevertheless, defendant is only 29 years old, and it appears that
9 the Bureau of Prisons has been able to sufficiently diagnose and
10 treat his medical conditions, including his diagnosis of COVID-19
11 (though his rash appears to be persistent).  (See Def.'s BOP
12 Health Records at 1-2.)

13         When moving for relief under § 3582(c), it is the
14 defendant who bears the burden of showing that his chronic
15 medical issues rise to the level of "extraordinary or compelling
16 circumstances" that would render him eligible for compassionate
17 release.  United States v. Recinos, No. 1:12-cr-00035 DAD BAM,
18 2020 WL 4194080, at *3 (E.D. Cal. July 21, 2020) (citing United
19 States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).
20 Here, defendant relies on a clinical study performed at Wuhan
21 Hospital--which he claims shows that "Covid-19 positive patients
22 with the comorbidity of thrombocytopenia . . . were found to have
23 a mortality rate nearly three times higher than patients without
24 thrombocytopenia, upon admission to the hospital"--to argue that

---

[2] The United States contends that defendant's medical records from the Bureau of Prisons ("BOP") do not indicate that defendant has been diagnosed with any CDC identified health problems which would increase his risk of severe illness from COVID-19.  (See Docket No. 210 at 4.)

he is now more likely to die from his lingering symptoms of Covid-19 or from re-infection with Covid-19 due to his pre-existing condition, ITP.  (See Def.'s Mot. for Compassionate Release at 3, 13, Ex. A.)

However, this study alone, without any other evidence related to the symptoms of ITP or the likelihood of defendant suffering from pulmonary blood clots, fails to show that ITP, when combined with the symptoms of Covid-19, rises to the level of a "terminal illness" or a serious medical condition that 'substantially diminishes the ability of the defendant to provide self-care" or "from which he . . . is not expected to recover"--the kinds of illnesses and medical conditions contemplated by the U.S. Sentencing Commission as qualifying a defendant for compassionate release.  See U.S.S.G. § 1B1.13 n.1A(i)-(ii) (U.S. Sentencing Comm'n 2018).

In particular, the study relied on by defendant concerns patient outcomes upon admission to the hospital.  When defendant contracted Covid-19 in June 2020, he did not appear to suffer from any serious complications and did not require hospitalization.  (See BOP Health Records at 1-16.)  Defendant has not submitted sufficient evidence to show that he is at any heightened risk of re-contracting Covid-19 in the future or that this risk would be materially any different outside of prison. Finally, none of defendant's other ailments, including obesity, pose a sufficiently serious threat to defendant's health to qualify as "extraordinary and compelling reasons" as contemplated by the U.S. Sentencing Commission either.  See Recinos, 2020 WL 4194080, at *3.

    Moreover, defendant has made no showing that he would receive any better care outside of the Bureau of Prisons or that he would be better able to get a COVID-19 vaccination outside of federal custody than he would in custody.  For all those reasons, defendant has not met his burden of showing that his chronic conditions, along with the COVID-19 pandemic, qualify as extraordinary and compelling reasons for release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.  See, e.g., United States v. Williams, No. 2:13-cr-383 TLN, 2020 WL 3402439, *2 (E.D. Cal. June 19, 2020) (defendant's confinement at FCI Lompoc and diagnosis of hypertension along with other medical history and prevalence of COVID-19, was insufficient to show extraordinary circumstances under 18 U.S.C. § 3582(c)(1)(A)).

    Furthermore, defendant cannot meet his burden of demonstrating that he is "not a danger to the safety of any other person or to the community." See U.S.S.G. § 1B1.13(2).  While defendant's prior criminal history consists only of two misdemeanor convictions for driving on a suspended license, the presentence report describes multiple occasions over the course of at least seven months where defendant sold large quantities of methamphetamine.  (See Docket No. 365 ¶¶ 9-22.)  During this time period, defendant acted as a methamphetamine and arms supplier for "Bulldog" gang members trafficking in sex, drugs, and illegal firearms.  (See id.)

    IT IS THEREFORE ORDERED that defendant's motion for compassionate release under § 3582(c)(1) (Docket No. 609), be, and the same hereby is, DENIED.

///

7

Dated: January 14, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE